Filed 11/21/13  Peters v. O'Brien CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID M. PETERS,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>SHAWN O'BRIEN et al.,<br><br>     Defendants and Appellants. | D062805<br><br><br><br>(Super. Ct. No. 37-2011-00058811-CU-MC-NC) |

APPEAL from orders of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Ellis Law Group, Mark E. Ellis, Ronald R. Poirier and Amanda Griffith for Defendants and Appellants.

Law Offices of Joseph Adelizzi, Joseph Adelizzi; Peters & Freedman and David M. Peters for Plaintiff and Respondent.

Defendants and appellants Shawn and Sharon O'Brien (referred to individually by first name or collectively as the O'Briens) and their attorneys, defendants and appellants

Ronald R. Poirier and Ellis, LaVoie, Poirier, Steinheimer & McGee, LLP (Ellis LaVoie) (all collectively defendants), separately appeal the orders denying their anti-SLAPP motions brought under Code of Civil Procedure section 425.16[1] to strike the malicious prosecution case filed against them by the O'Briens' former attorney, plaintiff and respondent David Peters (Peters). Peters and his law firm, Peters & Freedman (P&F), represented the O'Briens in a dispute with a third party who supplied and allegedly installed defective kitchen cabinets in the O'Briens' home. Defendants contend the trial court erred in denying their respective anti-SLAPP motions because Peters allegedly failed to establish under section 425.16, subdivision (b)(1) that there is a probability he would prevail on his malicious prosecution case.

As we explain, we conclude Peters established a prima facie case for malicious prosecution against the O'Briens and Ellis LaVoie. As such, we affirm the orders denying defendants' anti-SLAPP motions.

BACKGROUND

A. *Overview*

The O'Briens in 2007 entered into a contract with a cabinet company in which the company agreed to supply kitchen cabinets in the O'Briens' home at a cost of about $10,000. The O'Briens claimed the cabinet company failed to timely perform the contract, furnished defective cabinets and damaged their property during the installation

---

[1] All statutory references are to the Code of Civil Procedure. Section 425.16 is commonly referred to as the anti-SLAPP statute. (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1568.) SLAPP is an acronym for "'strategic lawsuit against public participation.'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

of the cabinets.  As discussed in more detail *post*, the O'Briens were referred by a mutual friend to Peters and his law firm, P&F.

Shawn held a general contractor's license and a landscaping specialty contractor's license.  Although there is a dispute concerning the actual terms of their oral agreement, Peters and Shawn agreed to trade certain landscaping services for legal services. Thereafter, P&F filed on behalf of the O'Briens a complaint against the cabinet company.

A dispute subsequently arose between the O'Briens and P&F after Peters asked Shawn to perform certain landscaping services at Peters's home.  Peters believed Shawn was required to perform such services under the terms of their oral agreement.  Shawn, however, said he did not perform such services and his expertise was landscape design and consulting, which Peters did not need or want.

As a result of this disagreement, Peters emailed Shawn in late June 2008 that because Shawn was unwilling to provide landscape services as opposed to landscape design, Peters wanted the O'Briens to sign a written fee agreement and pay a retainer. Peters noted the written fee agreement set forth "severely reduced" hourly rates for P&F attorneys because the O'Briens had been referred by a mutual friend.  In addition, Peters's email addressed the issue of settlement:

"As I stated to you [i.e., Shawn] before, since there is no prevailing parties attorney's fees, hence, you have little chance of net recovery after attorney's fees and costs.  If and when this case ever goes to trial, these estimates would be severely

3

scrutinized. Candidly, the numbers set forth in your letter [discussed *post*] are both high or simply unrecoverable.

"I do not believe that the settlement value is near the range you have proposed in your letter. As I stated earlier, I believe that slam dunk victory, which we *presume* will be collectable[,] is between 20K–24K. After reviewing your latest correspondence, that number could be slightly higher, however, I suspect that it would not.

"At present, I am confident we can get $15K now. I do not believe that there is any more money available absent proceeding towards trial. I have agreed to reduce our bills and advanced costs to be no more than $12K. This leaves [you] with a net recovery of $3,000.00. In any event, I have revised the hourly rate downward. . . . If you do not want to settle this matter under these terms and conditions, please execute the revised agreement and provide our office with a $5,000.00 retainer so that we may proceed forward. If you do not want to settle in this manner and are unwilling to execute the enclosed agreement, we will have no choice[] but to withdraw[] as counsel. Obviously, we would be seeking the quantum mer[uit] value of our services performed to date."

The record shows that the O'Briens, in response, consulted their long-time friend and personal attorney of 12 years, Poirier, a partner at Ellis LaVoie. Poirier wrote Peters on July 10, 2008 seeking an "informal resolution" between the O'Briens, on the one hand, and Peters and P&F on the other hand. Poirier noted he did not then represent the O'Briens, as they were still represented by P&F, but that he had a "general understanding" of their dispute. Poirier also indicated he was contemplating attending a

4

proposed settlement conference between the O'Briens and the cabinet company and asked Peters to forward to him any settlement conference briefs submitted by the parties.

Regarding the fee agreement, Poirier opined that although there was no written agreement, an "oral fee agreement[] can be an acceptable form of fee agreement between the attorney and client under certain circumstances, providing the essential terms are discussed and agreed upon, which appears to be the case here." Regarding settlement, Poirier noted the O'Briens, in their view, were entitled "to any and all recovery obtained, minus verified costs. Having relied upon your continued representations regarding the value of the case, their existing fee agreement, as well as the likelihood of success, they are reasonable in concluding that their net recovery should be no less than between $20,000-$15,000." Poirier concluded by noting that the O'Briens had the "utmost confidence" in P&F and Peters and thus wanted P&F to continue representing them.

Despite the involvement of Poirier, P&F moved to withdraw as the O'Briens' counsel of record in the lawsuit against the cabinet company. Before P&F filed the motion to withdraw, Peters again advised Shawn that they were "severely over estimating [*sic*] the value of [their] case and underestimating the cost of taking this matter to trial." Shortly thereafter, the O'Briens emailed P&F and terminated their attorney-client relationship with the law firm. About a week later, the O'Briens settled their case with the cabinet company for $22,500.

B. *The Underlying Action*

After the settlement, P&F sued the O'Briens in the Superior Court of the State of California, County of San Diego, North County Division (case No. 37-2008-00059507-CU-BC-NC; hereafter the underlying action) for unpaid attorney fees of more than $25,000. The O'Briens responded by hiring Ellis LaVoie and filing a cross-complaint against both P&F and, as relevant here, Peters individually. In their cross-complaint, the O'Briens asserted causes of action against Peters individually for constructive fraud/intentional misrepresentation and breach of fiduciary duty, among other causes of action, and sought compensatory damages of about $100,000 and punitive damages.

After several days of trial, the trial court sitting as the trier of fact issued a statement of decision (SOD) finding in favor of P&F and against the O'Briens. The SOD provides in part as follows:

"At the outset of P&F's representation of the O'Briens, the O'Briens provided P&F with a letter [discussed *ante*] that the O'Briens had prepared for [the cabinet company]. In that letter, the O'Briens discussed the problems they had experienced and they identified their alleged damages associated with the cabinet problems. The O'Briens identified damages of $41,895, consisting of: $2,500 for ceiling replacement; $875 for kitchen pocket door replacement; $2,800 for granite countertop replacement; $275 for crown molding labor; $225 for plumbing repair; $20 for a broken toilet seat; $14,200 for cabinet replacement; $9,000 for loss of kitchen use; and $12,000 for loss of use of the main floor of the home. Hence, more than half of the alleged damages (a total of

6

$21,000) arose from the O'Briens' claim for the alleged 'complete loss [of] use of [the] main floor of [their] home' and for 'dining out' costs and other damage from the alleged lost use of their kitchen for approximately 6 months.

"P&F used this information to prepare and send a demand letter to [the cabinet company].

"Thereafter, P&F prepared, and filed in Superior Court, a complaint by which the O'Briens sought damages from [the cabinet company].

"It is unnecessary to recite here the entire history of the . . . lawsuit by the O'Briens against [the cabinet company]. A few elements of the . . . lawsuit are significant to the resolution of the current case, however, and those will be briefly summarized here.

"First, [the cabinet company] asserted . . . that it was not responsible for the cabinet problems because the problems resulted entirely from improper installation of the cabinets, and the installation had been performed by a third party -- Larry Tucker Cabinets of Rosarito, Mexico. Shawn O'Brien acknowledged entering into a contract with Larry Tucker for installation of the cabinets but Shawn O'Brien claimed that Larry Tucker was part of [the cabinet company].

"In this regard, [the cabinet company] provided the following interrogatory response . . . : 'Plaintiffs [the O'Briens] hired an unlicensed contractor, Larry Tucker of Larry Tucker Cabinets, to perform the installation of the cabinets that were properly designed, manufactured and delivered by [the cabinet company]. The plaintiffs [the O'Briens] have alleged that the installation was improper and resulted in damage to them.

7

The design and manufacture of the cabinets was proper and did not result in any damage to the plaintiffs. Delivery of the cabinets did not result in any damage to the plaintiffs [the O'Briens].'

"Additionally, [the cabinet company] produced an 'amended' contract between [it] and Shawn O'Brien, in which a line addressing responsibility for installation was crossed-out. This 'amended' contract purported to show that Shawn O'Brien specifically agreed that [the cabinet company] was not responsible for installation. However, Shawn O'Brien asserted that this document was a forgery. Hence, there was an important dispute in the underlying lawsuit about the veracity of the two sides. On one side of the dispute, [the cabinet company] was asserting that Shawn O'Brien had signed an 'amended' contract and was now lying about it. On the other side, Shawn O'Brien was asserting that [the cabinet company] had created a forged document.

"Second, the damages being claimed by the O'Briens were, from [the cabinet company's] perspective, excessive and not supported by the available documentation. [The cabinet company] had contracted to provide cabinets for $10,386.47. From [the cabinet company's] perspective, the $10,386.47 contract had morphed into a damages claim for more than $40,000, of which more than $20,000 reflected alleged lost use of portions of the O'Briens' home. [The cabinet company's] attorney did not believe that the O'Briens' documents supported their damages claim.

"Given these issues, [the cabinet company's] attorney believed that [the cabinet company] would have obtained a defense verdict if the . . . lawsuit had proceeded to trial.

8

"Nevertheless, approximately seven months into the [lawsuit, the cabinet company] made a settlement offer of $12,000 under Code of Civil Procedure section 998. A couple of weeks later, after discussions among counsel for the parties, [the cabinet company] made a settlement offer of $15,000. [¶] . . . [¶]

"Immediately before and after the email terminating the relationship with P&F, Shawn O'Brien was communicating directly with [the cabinet company's] attorney concerning settlement of the . . . lawsuit. Approximately a week after terminating the relationship with P&F, the O'Briens settled their claims against [the cabinet company] for $22,500. The O'Briens have since received the entire $22,500 settlement amount.

"After the settlement of the . . . lawsuit was completed, this current case was filed. [¶] P&F's complaint in this case asserts three causes of action: (1) breach of contract; (2) common count for quantum meruit; and (3) account stated. [¶] The O'Briens cross-complaint asserts four remaining causes of action: (1) legal malpractice; (2) breach of fiduciary duty; (3) breach of contract; and (4) constructive fraud/intentional misrepresentation."

The court found P&F failed to establish that the "parties reached a meeting of the mind on all material points" of the oral retention agreement, including the services Shawn was to provide and how the parties intended to value the services to each other. As such, the court found against P&F on its breach of contract action.

However, the court found in favor of P&F on its quantum meruit cause of action. As to Shawn, the court found there was no dispute he requested legal services from P&F.

9

As to Sharon, the court found not credible her assertion she did not seek legal services from P&F, as the court noted there were multiple email communications from Sharon to P&F that, "in the context of the entire history of the parties' dealings, plainly constitute, at a minimum, an implied request for services." The court also found that some of the communications from Sharon to P&F "constitute[d] an express request for [legal] service," and that Shawn, in any event, was acting as an agent of Sharon in their "dealings with P&F, including his requesting services from P&F."

The court also found P&F provided "valuable legal services" to the O'Briens in connection with their dispute against the cabinet company, and the O'Briens had not paid for such services.

The court noted there was a dispute between P&F and the O'Briens regarding the reasonable value of P&F's services. On the one hand, P&F in its complaint sought to collect more than $25,000 from the O'Briens. The court noted this figure was derived by multiplying the number of hours P&F staff/professionals spent representing the O'Briens by the hourly billable rates charged by the law firm. The court further noted Peters's testimony in the underlying action that P&F should recover an amount "in the range of 40-50%" of the amount sought in the complaint, given the $22,500 settlement obtained by the O'Briens.

The court recognized the O'Briens, on the other hand, contended P&F should not be entitled to recover "any fees because, among other reasons, P&F committed 'serious ethical violations' that should preclude any recovery of fees in this case." The court

10

rejected this contention, noting: "The Court is not persuaded that (1) P&F committed serious ethical violations, and (2) P&F should recover nothing for its work on behalf of the O'Briens. The services provided by P&F were valuable to the O'Briens. The settlement of the [cabinet company] lawsuit was an excellent result, and could not have been achieved without the legal services provided by P&F[] to the O'Briens.

"The Court finds that the reasonable value of the services provided by P&F is $9,000. This amount is consistent with, although not an exact calculation from: (a) Attorney Peter's testimony concerning the value of the services provided; (b) standard contingency fee arrangements, consisting of a percentage recovery of any settlement plus reimbursement of costs, according to the evidence presented in this case; and (c) the court's own independent assessment of the number of hours worked by P&F professionals, the hourly rates of those professionals and the relative benefit provided to the O'Briens by the services provided by P&F professionals."[2]

Particularly germane to the instant dispute, the court next turned to the O'Briens' cross-complaint. Regarding their legal malpractice cause of action, the court noted the O'Briens were required to prove that absent P&F's alleged negligence, they would have obtained a better result in the lawsuit with the cabinet company. Applying this principle, the court found the O'Briens' legal malpractice action lacked merit because the $22,500 settlement "was an excellent result in light of the facts of that case. The settlement amount was well in excess of the amount that a reasonable fact finder would have

_____

[2]    The court found against P&F on its account stated cause of action.

11

awarded to the O'Briens if a reasonably competent attorney had taken the matter to trial. There are many reasons for this conclusion, but the primary reason is that, even assuming that [the cabinet company] was liable to the O'Briens . . . , the O'Brien[s'] damages were clearly exaggerated.

"The exaggerated damages are magnified by the fact that Shawn O'Brien and Sharon O'Brien are not credible witnesses.  For example, at the same time that the O'Briens were seeking damages from [the cabinet company] for alleged significant problems with the cabinets, Shawn O'Brien wrote to his insurance carrier saying that the cabinet work was 97% complete and that the remaining 3% would be completed in 3 weeks.

"The O'Briens failed to prove that a reasonably competent attorney could have obtained a better result than the result actually achieved in the . . . lawsuit.  From this Court's perspective, the $22,500 settlement was a remarkably good outcome . . . and would not have been achieved in the absence of the legal services rendered by P&F to the O'Briens.

"The O'Briens' malpractice expert, James King, provided a long list of actions by P&F that, according to Attorney King, failed to meet the applicable standard of care. Even assuming that any such actions failed to meet the applicable standard of care, the O'Briens failed to prove that any such actions caused them any damage.

12

"For example, Attorney King testified that P&F failed to meet the standard of care when P&F failed to file a certificate of service on time. Assuming P&F failed to timely file a certificate of service, there was no injury or damage caused by this failure.

"As another example, Attorney King testified that P&F failed to meet the standard of care when P&F failed to provide sufficient evidence to allow the court in the . . . lawsuit to grant a request to permit service by publication. Again, assuming P&F failed in this regard, there was no injury or damage caused by this failure.

"These are just two examples. The O'Briens failed to prove any injury or damage was caused by any of the alleged misconduct by P&F.

"Attorney King also offered the opinion that when P&F sent the demand letter to [the cabinet company] prior to filing the . . . lawsuit, P&F was 'representing' to the O'Briens that the O'Briens' case was worth the amount stated in the demand letter. Attorney King further characterized the amount in the demand letter as an 'admission' by P&F concerning the value of the case.

"These assertions, and others made by Attorney King, are so extreme as to cause this Court to doubt the believability of substantial portions of Attorney King's testimony.

"The Court has the duty to assess the believability of all testimony. [Citations.] The Court does not believe much of Attorney King's testimony. The Court also finds that the testimony of Shawn O'Brien and Sharon O'Brien was not credible.

"In short, the O'Briens failed to prove that they have suffered actual loss or damage in connection with any of the services provided by P&F. [¶] In addition, the

13

O'Briens failed to prove any causal connection between any conduct by P&F and any claimed injury. [¶] Finally, the Court is not persuaded that P&F failed to meet the applicable standard of care with respect to the services performed for the O'Briens."

The court next turned to the O'Briens' breach of fiduciary duty cause of action. The court noted this claim failed for the same reason as the O'Briens' claim for legal malpractice, namely: "The O'Briens failed to prove that they have suffered actual loss or damage. [¶] In addition, the O'Briens failed [to] prove any causal connection between any alleged misconduct by P&F and any claimed injury. [¶] Finally, the Court is not persuaded that P&F failed to fulfill its fiduciary duties to the O'Briens."

As to the O'Briens' breach of contract action, the court noted that the O'Briens could not prevail on this claim because the evidence established that "P&F and the O'Briens did not agree 'upon the same thing in the same sense.'"

Finally, regarding the O'Briens' claim for constructive fraud/intentional misrepresentation, the court found they failed to prove that Peters "or anyone else on behalf of P&F knowingly made false representations to the O'Briens. In this regard, the Court finds the testimony of Shawn O'Brien to be not credible."

C. *The Malpractice Case*

Following the trial court's decision awarding P&F $9,000 on its quantum meruit cause of action, Peters individually filed a malicious prosecution case against the O'Briens and their counsel in the underlying action, Ellis LaVoie. Peters alleged in his malicious prosecution case that the O'Briens, as assisted by Ellis LaVoie, "acted without

14

probable cause in bringing the Cross-Complaint and did not honestly and reasonably believe that there were grounds for the action because they received excellent results and simply filed the Cross-Complaint in retaliation against [Peters] for filing a lawsuit to recover fees for the legal services P&F provided to [the] O'Briens."

Peters further alleged the O'Briens, with the assistance of Ellis LaVoie, acted maliciously in filing the cross-complaint against him because it was filed for "an improper motive or purpose, with a desire to annoy and wrong [Peters], while engaging in 'scorched earth' litigation tactics by, among other things, noticing and taking the deposition of every Partner of P&F, even though they were not involved in representing the O'Briens, all in an effort to cause P&F harm and to dismiss or abandon its lawsuit filed against the O'Briens." As a result of such conduct by defendants, Peters sought damages of at least $150,000 and an award of punitive damages.

D. *Defendants' Anti-SLAPP Motions*

The O'Briens and Ellis LaVoie each filed an anti-SLAPP motion. As relevant here, defendants alleged Peters could not show a probability of prevailing on his malicious prosecution case because he could not establish that the O'Brien's cross-complaint in the underlying action was prosecuted by Ellis LaVoie without probable cause and was initiated with malice. The O'Briens separately contended their reliance on the advice of counsel was a complete defense to the malicious prosecution case.

15

As to the O'Briens, after ruling on the parties' myriad evidentiary objections,[3] the court denied their anti-SLAPP motion as follows:

"It is undisputed that this malicious prosecution action is a SLAPP suit as a matter of law pursuant to CCP 425.16. (See Jarrow Formulas, Inc. v. LaMarche (2003) 31 Cal.4th 728[.]) Thus, the burden shifts to Plaintiff to establish that there is a probability he will prevail on his claim. (See CCP 425.16(b)(1)[.])

"Based on the admissible evidence in the record presented on this motion, the Court concludes that Plaintiff has met his burden under CCP 425.16(b)(1), i.e., he has established his claim is legally sufficient and supported by a prima facie showing of facts sufficient to support a favorable judgment if the evidence submitted by plaintiff is credited. (Navellier v. Sletten (2002) 29 Cal.4th 82, 89, 93[.]) Thus the Court concludes Plaintiff has made a sufficient prima facie showing that Plaintiff obtained a favorable termination in the underlying cross-complaint; the O'Briens lacked probable cause to bring the underlying cross-complaint; and that [the] cross-complaint was initiated with malice to meet his burden in this motion. (See Brennan v. Tremco, Inc. (2001) 25 Cal.4th 310[.])"

As to Ellis LaVoie, the court similarly denied its anti-SLAPP motion, ruling that Peters satisfied his burden under subdivision (b)(1) of section 425.16 to show by admissible evidence his malpractice claim "is legally sufficient and supported by a prima

---

3     Defendants have challenged several of the evidentiary rulings made by the trial court in its orders denying their respective anti-SLAPP motions. We have reviewed each of the challenged rulings and conclude that, even *if* erroneous, they have no bearing on the outcome of this case.

facie showing of facts sufficient to support a favorable judgment if the evidence submitted by [Peters] is credited." In so doing, the court rejected the contention Peters individually could not establish a probability of success on the merits because he, as opposed to the law firm, P&F, suffered no damages. The court found Peters stated in his declaration that he "'personally gave up in excess of $150,000 in draws because of the costs of the litigation associated with the cross-complaint'" filed by the O'Briens in the underlying action.[4]

DISCUSSION

A. *Guiding Principles*

Under section 425.16, subdivision (b)(1), a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." In making this determination, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

In the instant case, there is no dispute among the parties that a malicious prosecution claim is subject to the anti-SLAPP statute. (See *Jarrow Formulas, Inc. v.*

---

[4] Defendants have not challenged the determination that Peters, in contrast to P&F, personally suffered damages as a result of the O'Briens' filing of the cross-complaint against him and P&F in the underlying action.

17

*LaMarche*, *supra*, 31 Cal.4th at pp. 736-741; *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 548-549.)  As such, the burden then shifted to Peters to show a likelihood of prevailing on the claim.  (See § 425.16, subd. (b)(1).)

To show the likelihood of prevailing on the merits, a plaintiff "'must demonstrate that the complaint [was] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence [it] submitted . . . [was] credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)  "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.]  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citations.]" (*Nygard, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 1036.)  We independently review the trial court's order granting a special motion to strike under section 425.16.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.)

B.  *Probability of Success on the Merits of Malicious Prosecution Case*

To prove a malicious prosecution claim, Peters must show the underlying action "'(1) was commenced by or at the direction of defendant[s] and was pursued to a legal termination in . . . plaintiff's[ ] favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citation.]" (*Crowley v.*

18

*Katleman* (1994) 8 Cal.4th 666, 676; see also *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)

Here, there is no dispute between the parties that the O'Briens' cross-complaint prosecuted in the underlying action by Ellis LaVoie was terminated in favor of Peters (and P&F). We thus turn to the issue of probable cause.

1. <u>Probable Cause</u>

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted.  The court must 'determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.)  'The resolution of that question of law calls for the application of an objective standard to the facts on which the defendant acted.  [Citation.]' (*Ibid*., italics omitted.)  The test the court is to apply is whether 'any reasonable attorney would have thought the claim tenable . . . .' (*Id*. at p. 886.)  The tort of malicious prosecution also includes the act of 'continuing to prosecute a lawsuit discovered to lack probable cause.' (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.)  In determining the probable cause issue, the same standard applies 'to the continuation as to the initiation of a suit.' (*Id*. at p. 970.)

"'In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought.  A litigant will lack probable cause for his

action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.'  [Citation.]

"In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying complaint liberally, in a light most favorable to the malicious prosecution defendant.  [Citation.]"  (*Kleveland v. Siegel & Wolensky, LLP*, *supra*, 215 Cal.App.4th at pp. 550-551.)

If, as in the instant case, the prior action charged multiple grounds of liability, a malicious prosecution action will lie if any of those grounds was asserted without probable cause and with malice.  (*Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 671 [holding that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause"].)

2. Analysis

Here, focusing solely on the constructive fraud/intentional misrepresentation claim of the O'Briens (see *Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 671), the issue is whether Peters presented evidence in opposition to defendants' anti-SLAPP motions that, if believed by the trier of fact, was sufficient to support a finding that defendants initiated or continued to prosecute this cause of action against Peters individually without probable cause.  We conclude Peters has made the required showing.

20

The thrust or gravamen of the O'Briens' constructive fraud/intentional misrepresentation cause of action against Peters is that he made certain misrepresentations concerning both the value of their claim against the cabinet company and the services, and the material terms of such services, agreed to by he and Shawn that Peters and his law firm allegedly agreed to perform, which representations, the O'Briens alleged, induced them to enter into the "oral contract" with P&F.

As to the issue of valuation, the O'Briens contended in the underlying action that Peters falsely represented their case against the cabinet company was worth in excess of $40,000 in order to induce them to retain Peters and P&F. Peters, however, proffered sufficient admissible evidence to show defendants had no reasonable cause to believe this fact was true.

Indeed, the record shows that *before* the O'Briens filed their cross-complaint in the underlying action, Peters, on more than one occasion, had advised the O'Briens that their damage claim of about $42,000 against the cabinet company was "both high or simply unrecoverable"; that the settlement value of their case was not near their damages claim; and that even if the O'Briens obtained a "slum dunk" victory *and* could collect against the cabinet company, the O'Briens at best could expect to recover between $20,000 to $24,000.

The record also shows Poirier attempted to resolve informally the dispute between the O'Briens and Peters *before* the O'Briens filed their cross-complaint against Peters. In

21

his letter to Peters discussed *ante*, Poirier stated the O'Briens were expecting to recover between $15,000 to $20,000 in their lawsuit against the cabinet company.

In addition, the trial court in its SOD found that at the outset of their case the O'Briens provided Peters with a summary of their damages against the cabinet company (i.e., the letter), and not vice versa, and that in this summary more than half the alleged damages claimed by the O'Briens resulted from "'dining out'" costs and other alleged losses they incurred as a result of their inability to use their kitchen for about six months, all due to the alleged improper design and/or installation of about $10,000 worth of kitchen cabinets.

What's more, the trial court also found that the damages sought by the O'Briens against the cabinet company were "clearly exaggerated," that the settlement of $22,500 was an "excellent result" under the circumstances and that Shawn was not credible as a witness. Although these findings came at the conclusion of the underlying action, they nonetheless lend support to the evidence proffered by Peters, which, if believed, shows that defendants had no reasonable cause to believe Peters falsely represented the O'Briens' case against the cabinet company was worth in excess of $40,000 in order to induce the O'Briens to enter into the oral retention agreement with P&F.

That the O'Briens proffered evidence that contradicted Peters's evidence and, in so doing, alleged that Peters and P&F inadequately represented them in their action against the cabinet company and allegedly committed myriad breaches of fiduciary duty, does

22

not change our conclusion.[5]  (See *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 453 [noting that "[i]f there is a dispute concerning the facts or beliefs on which the former plaintiff [or cross-complainant, as relevant here] acted, that question must be resolved by a trier of fact" and noting the issue of whether the facts found support a tenable claim to establish probable cause "is a question of law for the court"].)

The issue at bar does not require us to resolve a conflict in the evidence, something we cannot do in any event.  (See *Drummond v. Desmarais*, *supra*, 176 Cal.App.4th at p. 453.)  Rather, from the record, we conclude Peters proffered sufficient evidence that, if credited, satisfies his burden under subdivision (b)(1) of section 425.16 to show a probability of success on the merits that defendants had no reasonable cause to believe Peters falsely represented the O'Briens' case against the cabinet company was worth in excess of $40,000.[6]

---

[5]   Although technically not relevant to the issue of whether Peters sustained *his* burden under subdivision (b)(1) of section 425.16 to show a probability of success on the merits of his malicious prosecution case, we note the trial court in its SOD expressly found the O'Briens "failed to prove that they have suffered actual loss or damage in connection with any of the services provided by P&F"; "failed [to] prove any causal connection between any alleged misconduct by P&F and any claimed injury"; failed to prove P&F did not "fulfill its fiduciary duties to the O'Briens"; and "failed to prove that Attorney Peters or anyone else on behalf of P&F knowingly made false representations to the O'Briens."  In connection with this latter finding, the court also found Shawn's testimony "not credible."

[6]   For similar reasons, we reject the contention of defendants that, as a matter of law, they established the O'Briens had probable cause to assert a constructive fraud/intentional misrepresentation cause of action against Peters in the underlying action because the trial court overruled the general demurrer of Peters (and P&F) to this claim.  Whether the O'Briens properly pleaded sufficient allegations in connection with this cause of action, which, in any event, the court must accept as true in ruling on a demurrer (see *Crowley v.*

23

Turning next to the terms of the oral retention agreement between P&F and the O'Briens as negotiated by Peters and Shawn, the O'Briens in their constructive fraud/intentional misrepresentation claim asserted that the deal required Shawn to provide "landscape design and consulting services" for Peters and his law partners in return for legal representation by P&F against the cabinet company. The O'Briens further asserted that Peters accepted this arrangement and then later changed the deal in an attempt to negotiate a new fee agreement with the O'Briens on more favorable terms.

Peters proffered admissible evidence showing he agreed on behalf of P&F to represent the O'Briens in their dispute against the cabinet company as a favor to a "mutual friend" of his and Shawn's because the O'Briens did not have the money to retain P&F. Peters previously had entered into a similar relationship with another landscaper and that relationship, according to Peters, had gone smoothly. As a result, the mutual friend, who owned a nursery, suggested Shawn contact Peters to discuss a similar arrangement.

As a quid pro quo for legal services provided by P&F, Peters proffered evidence showing the O'Briens at the outset agreed that Shawn would perform "landscape services" for Peters and other attorneys in P&F, as opposed to "landscape design and consulting services" as the O'Briens alleged in their constructive fraud/intentional misrepresentation claim.

_Katleman_, _supra_, 8 Cal.4th at p. 672), is far different from the issue whether Peters had proffered sufficient admissible evidence under subdivision (b)(1) of section 415.16 to show a probability of success on the merits of his malicious prosecution case against defendants.

24

This evidence includes a business card Shawn gave Peters at their initial consultation stating, among other things, that Shawn's company was a "landscape contractor" performing "maintenance" services including "24-Hr. Emergency Service." Peters in his declaration testified under penalty of perjury that, during their initial consultation, Shawn never indicated that he did not perform landscaping services and never indicated he performed only "design/consulting" services.

The record also shows that P&F filed suit against the cabinet company on behalf of the O'Briens and represented them in that action for about nine months. It was around this time that Peters, for the *first* time, inquired with Shawn about "landscaping services" on Peters's property. When Shawn refused, Peters then sought, for the *first* time, to renegotiate P&F's oral retention agreement with the O'Briens.

We conclude this evidence, if believed, satisfies Peters's minimal burden under the anti-SLAPP statute to show a probability of success on the merits that defendants had no reasonable cause to believe that Peters (on behalf of P&F) initially agreed to represent the O'Briens in return for "landscaping design and consulting services" only, as the O'Briens allege in their constructive fraud/intentional misrepresentation claim. We further conclude this evidence also is sufficient to show defendants had no reasonable cause to believe that Peters, on behalf of P&F, intentionally misled the O'Briens by entering into the representation of the O'Briens on certain terms, as the O'Briens contended in their cross-complaint, with the intent to renegotiate the terms of that representation months later after Shawn refused to perform landscape services on Peters's property.

25

Finally, regarding the allegation in their constructive fraud/intentional misrepresentation cause of action that Peters intentionally misled the O'Briens when he represented that "no written fee agreement was required or necessary and that the terms of the oral agreement were adequate," the record shows that *before* the O'Briens sued Peters under this cause of action, they conferred with Poirier of Ellis LaVoie. Poirier acknowledged in his July 2008 letter to Peters that "[a]lthough not recommended, oral fee agreements can be an acceptable form of fee agreement between the attorney and client under certain circumstances, providing the essential terms are discussed and agreed upon, which appears to be the case here."[7] Poirier also acknowledged the O'Briens then had the "utmost confidence" in P&F's continued representation of their interests against the cabinet company under the then-applicable oral agreement.

We conclude from this evidence that Peters has made a prima facie showing that defendants relied on facts they had no reasonable cause to believe were true when the O'Briens, with the assistance of Ellis LaVoie, contended in their underlying action that Peters intentionally misled the O'Briens concerning the validity and terms of the oral agreement negotiated by Peters and Shawn in order to induce the O'Briens to retain P&F.

---

[7] We offer no opinion on the issue whether an oral retention agreement between an attorney and his or her client is valid and enforceable, nor is such an opinion necessary in determining whether Peters satisfied *his* minimal burden under subdivision (b)(1) of section 425.16 to show a probability of success on the merits of his malicious prosecution case. (See *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291 [concluding a plaintiff "need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP"].)

26

3. Advice of Counsel Defense

The O'Briens alone claim the trial court erred in denying their anti-SLAPP motion because they relied on advice of counsel in filing their cross-complaint in the underlying action. (See *Nygard, Inc. v. Uusi–Kerttula*, *supra*, 159 Cal.App.4th at p. 1036 [a defendant's evidence is considered """only to determine if it has defeated that submitted by the plaintiff as a matter of law"""].)

To negate the lack of probable cause element in a malicious prosecution action by claiming reliance on counsel's advice, the O'Briens were required to show they: (1) consulted with a lawyer (i.e., Poirier from Ellis LaVoie) in good faith; (2) communicated all the relevant facts to their lawyer; (3) were advised by their lawyer that they had a valid cause of action; and (4) honestly acted upon the lawyer's advice. (See *Palmer v. Zaklama* (2003) 109 Cal.App.4th 1367, 1383.)

"Conversely, if the defendant acted in bad faith or withheld facts from counsel he or she knew or should have known would have defeated the cause of action, probable cause is not established. '[C]ounsel's advice must be sought in good faith [citation] and ". . . not as a mere cloak to protect one against a suit for malicious prosecution." [Citation.]' [Citation.] The burden of proving good faith reliance on the advice of counsel falls on the party asserting the defense. [Citation.]" (*Palmer v. Zaklama*, *supra*, 109 Cal.App.4th at pp. 1383-1384.)

Here, as documented by Poirier in his July 2008 letter to Peters, defendants had full knowledge of what the actual facts were concerning the value of the O'Briens' case

against the cabinet company and the propriety and terms of the oral agreement between the O'Briens and P&F *before* the O'Briens, with the assistance of Ellis LaVoie, asserted a constructive fraud/intentional misrepresentation cause of action against Peters in the underlying action.  As such, we conclude on this record that a reasonable jury could conclude that the O'Briens did not have an honest, good-faith belief that Peters was liable for constructive fraud/intentional misrepresentation.

C.  *Malice*

Defendants next contend Peters failed to meet his burden to show a probability of prevailing on the malice element of his malicious prosecution case.  We disagree.

The malice element focuses on the defendant's subjective intent in initiating the prior action and is generally an issue to be determined by a jury.  (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 874; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)  To establish malice, Peters is required to show by a preponderance of the evidence that defendants brought the prior action based on hostility or ill will or for another improper purpose.  (See *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522; *Ross v. Kish* (2006) 145 Cal.App.4th 188, 204.)

"Malice is usually proved by circumstantial evidence.  [Citation.]  Although a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party knowingly brings an action without probable cause. [Citation.]" (*Padres L.P. v. Henderson*, *supra*, 114 Cal.App.4th at p. 522.)  Whether malice exists presents a factual question, and its proof may be inferred from all the

28

circumstances of the case. (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 874.)

Here, we conclude Peters has submitted sufficient evidence from which a reasonable person could infer an improper motive by defendants in asserting a constructive fraud/intentional misrepresentation cause of action against Peters in the underlying action. We note the O'Briens, with the assistance of Ellis LaVoie, filed this claim in response to, and only after, P&F had sued the O'Briens for the reasonable value of its services after representing the O'Briens for about nine months. As a result of P&F's representation, the O'Briens were able to settle their action against the cabinet company for $22,500, a result the trial court found was "excellent" under the circumstances.

In addition, the O'Briens and Ellis LaVoie asserted this claim against Peters despite Poirier's July 2008 letter in which Poirier states that the O'Briens had the "utmost confidence" in Peters and P&F, that the O'Briens desired that Peters and P&F continue to represent their interests in the action against the cabinet company under the oral retention agreement, and that the O'Briens expected to recover from the cabinet company between $20,000 and $15,000. The record shows the O'Briens in fact settled with the cabinet company about a week after they terminated their relationship with P&F.

We conclude this evidence establishes a prima facie showing that defendants acted with ill will when the O'Briens, with the assistance of their attorneys, asserted a

29

constructive fraud/intentional misrepresentation cause of action against Peters in response to P&F's suit against the O'Briens to recover the reasonable value of its services.[8]

DISPOSITION

The orders denying the anti-SLAPP motions of the O'Briens and their attorneys, Ellis LaVoie, are affirmed. Peters to recover his costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

---

[8] Given our conclusion that Peters satisfied his minimal burden under subdivision (b)(1) of section 425.16 to show a probability of success on the merits in connection with his malicious prosecution case as it relates to the constructive fraud/intentional misrepresentation cause of action, we deem it unnecessary to determine whether Peters also could satisfy subdivision (b)(1) of section 425.16 in connection with the O'Briens' unsuccessful claim that Peters breached his fiduciary duty to them. (See *Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 671 [holding that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause"].)