Filed 3/18/25  Maldonado v. Slauson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CECILIA MALDONADO, | D084256 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVSB2202712) |
| ALYSSA SLAUSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Donald R. Alvarez, Judge.  Affirmed.  Motion for sanctions denied.

The Vera Law Group and Ronald T. Vera for Plaintiff and Appellant.

John L. Dodd & Associates and John L. Dodd for Defendant and Respondent.

Cecilia Maldonado appeals from an adverse judgment after the trial court sustained a demurrer in her lawsuit against Alyssa Slauson, individually and as the administrator of the estate of Felipe DeJesus Campiran.  Maldonado filed this lawsuit to seek enforcement of an oral agreement she allegedly entered into with Campiran, under which she was to

have an interest in the real property where she resided with Campiran from 2008 until his death.  The trial court sustained the demurrer because Maldonado failed to file a timely creditor's claim in the probate proceeding for Campiran's estate.

In this appeal, Maldonado contends that, based on principles of due process, she should have been excused, in this action, from the requirement to file a timely creditor's claim because she did not receive proper notice of the deadline to file a creditor's claim.  We conclude that because Maldonado had actual notice that Slauson's petition to administer the estate was granted, and because Maldonado could have applied to the probate court for relief to file a late creditor's claim, but she failed to do so, her due process argument lacks merit.  We accordingly affirm the judgment.

Slauson has filed a motion requesting that we impose sanctions on Maldonado for filing an objectively frivolous appeal.  We deny the motion for sanctions.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Campiran died intestate on February 5, 2021.  According to the allegations in Maldonado's complaint, Maldonado and Campiran lived together from 2008 until Campiran's death in a house that Campiran had purchased prior to 2008 (the Real Property).[1]  According to Maldonado, at the beginning of their cohabitation, she and Campiran entered into an oral agreement, under which they "agreed to treat [the Real Property] as joint property."  Based on that agreement, Maldonado allegedly "made the monthly mortgage payment on [the Real Property] from her personal income

---

[1]     Maldonado acknowledges, in her opening appellate brief, that the Real Property "was in Mr. Campiran's name as his sole and separate property."

2

with the understanding that she would be entitled to the value and investment of [the Real Property] in making the monthly mortgage payment."

A.    *Proceedings in the Probate Court*

Slauson, who is Campiran's daughter, filed a petition to administer her father's estate in late February 2021, initiating the probate court proceeding titled Estate of Felipe DeJesus Campiran (Super. Ct. San Bernardino County, No. PROPS2100158) (the Probate Proceeding).[2]  On March 1, 2021, Slauson was appointed special administrator of her father's estate, pending the probate court's future consideration of her petition to be appointed general administrator.  (Prob. Code,[3] § 8540, subd. (a) ["If the circumstances of the estate require the immediate appointment of a personal representative, the court may appoint a special administrator to exercise any powers that may be appropriate under the circumstances for the preservation of the estate."].)  Temporary letters of administration were issued to Slauson as special administrator after she posted a bond.  In her capacity as special administrator, Slauson entered the Real Property on March 6, 2021, to gather her father's belongings and assets, and in so doing, she took some items that Maldonado later contended belonged to her.

On March 15, 2021, Maldonado, through her attorney, filed and served on Slauson a request for special notice pursuant to section 1250.  Section 1250 states, "(a) At any time after the issuance of letters in a proceeding under this code for the administration of a decedent's estate, any person

---

[2]    Slauson has filed an unopposed request that we take judicial notice of certain documents from the Probate Proceeding.  We hereby grant the request.  (Evid. Code, § 452, subd. (d) [judicial notice of court records].)

[3]    Unless otherwise indicated, all further statutory references are to the Probate Code.

interested in the estate . . . may . . . file with the court clerk a written request for special notice. [¶] . . . [¶]  (c) Special notice may be requested of one or more of the following matters:  (1) Petitions filed in the administration proceeding. [¶] (2) Inventories and appraisals of property in the estate, including any supplemental inventories and appraisals. [¶] (3) Objections to an appraisal. [¶] (4) Accounts of a personal representative. [¶] (5) Reports of status of administration."  (§ 1250.)  Maldonado requested notice of "all matters for which special notice may be requested."

On April 21, 2021, Maldonado filed, in the Probate Proceeding, a petition under section 850 (the 850 Petition).[4]  In the 850 Petition, Maldonado sought (1) the return of certain items that she alleged Slauson had taken from the Real Property, and (2) an order establishing that "all or a portion of" Campiran's interest in the Real Property "should pass to and is an asset of [Maldonado]."

By the time of the hearing on the 850 Petition on July 28, 2021, the items of personal property were apparently no longer a significant issue, as they were not discussed,[5] but Maldonado still sought an interest in the Real

---

[4]    As relevant here, section 850 provides that an "interested person" may file a petition for an order directing the conveyance or transfer of property "[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another."  (§ 850, subd. (a)(2)(C).)  As also relevant here, however, section 856.5 states that "[t]he court may not grant a petition under this chapter if the court determines that the matter should be determined by a civil action."

[5]    With respect to the items of personal property, Slauson submitted a declaration explaining that she had located and returned the items that belonged to Maldonado.  Further, on March 30, 2021, the probate court had already ordered "any items of personalty including personal papers of Cecilia Mald[o]nado to be returned to her within 24 hours."

Property. Maldonado and her attorney, Ronald Vera, were present at the July 28, 2021 hearing. The probate court denied the 850 Petition, explaining that Maldonado currently lacked an interest in the Real Property, but that she could take certain steps to attempt to establish such an interest. The court explained, "At this particular point in time, Ms. Mald[o]nado has no interest, no claim to the property. Now, there are other ways she can go about this that might give her or lead to a claim or an interest in the property[.] [S]pecifically, of course, she could file a creditor's claim, and there's also the possibility of filing a *Marvin* claim, but today she has no claim to any of this property. So the 850 petition is going to be denied."[6] The court later reiterated, "[T]here are a number of claims that can be made, just not in the manner in which they got made in the 850 petition."

At the July 28, 2021 hearing, with Maldonado and her attorney still in attendance, the probate court decided that it would advance and consider the hearing on Slauson's petition to administer the estate. At the hearing, the court printed out the relevant order and signed it, granting Slauson's petition. The order prominently states, "WARNING: THIS APPOINTMENT IS NOT EFFECTIVE UNTIL LETTERS HAVE ISSUED." At the close of the hearing, Vera suggested to the court that a mediation between Maldonado and Slauson may be fruitful in resolving Maldonado's claim to an interest in the Real Property. The probate court endorsed the idea and directed the

---

[6]  In referring to a "*Marvin* claim," the probate court was referencing *Marvin v. Marvin* (1976) 18 Cal.3d 660 (*Marvin*) and subsequent case law, which established that, in certain circumstances, a person may successfully pursue a lawsuit to obtain an interest in property acquired during nonmarital cohabitation. "A *Marvin* agreement is enforceable against an estate when one of the parties to the agreement dies." (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1064.)

5

parties to contact his judicial assistant to schedule a mediation. It is not clear from the record whether a mediation ever occurred.

A week later, on August 5, 2021, after Slauson had fulfilled the requirements of obtaining a bond and signing an oath (§§ 8403, 8480), letters of administration were formally issued to Slauson by the clerk of the court, appointing her as administrator of her father's estate. After the issuance of the letters of administration, Slauson was required by section 9050, subdivision (a), to "give notice of administration of the estate to the known or reasonably ascertainable creditors of the decedent."[7] (§ 9050, subd. (a).) Slauson does not dispute that she failed to send a notice of administration to Maldonado.[8]

---

[7] The required form of the notice of administration to the estate's known or reasonably ascertainable creditors is set forth in section 9052. The notice should state that the "[a]dministration of the estate" of the deceased has commenced and that creditors must file and serve their claims by a specific statutorily determined deadline or, alternatively, must file a petition for leave to make a late claim.

[8] Slauson disputes in her respondent's brief whether she was required to send a notice of administration to Maldonado pursuant to section 9050. She contends that in ruling on the 850 Petition, the probate court decided that Maldonado was not a creditor with an interest in the estate, and therefore no notice was required. We are not persuaded. The probate court expressly stated at the July 28, 2021 hearing that Maldonado could take the step of filing a creditor's claim at the appropriate time and that there were "a number of claims that can be made, just not in the manner in which they got made in the 850 petition." From these statements, we infer that the probate court perceived Maldonado's asserted interest in the Real Property to qualify her as a creditor who could file a creditor's claim. Section 9050, subdivision (a) states that for the purpose of determining whether someone is a known creditor who should receive a notice of administration, "a personal representative has knowledge of a creditor of the decedent if the personal representative is aware that the creditor has demanded payment from the

6

On January 28, 2022, more than five months after the letters of administration were issued, Maldonado filed a creditor's claim, through her attorney Vera, claiming an interest in the Real Property. In the creditor's claim, Maldonado indicated that she intended "to file a 'Marvin' Complaint, to enforce her contract rights, but must first file this Creditor's claim to file a lawsuit."

Section 9100, subdivision (a), sets forth the deadlines for filing a creditor's claim. "A creditor shall file a claim before expiration of the later of the following times: (1) Four months after the date letters are first issued to a general personal representative. (2) Sixty days after the date notice of administration is mailed or personally delivered to the creditor." (§ 9100, subd. (a).) Maldonado's creditor's claim alleged that it was timely filed because "[t]he estate's personal representative has failed to give notice of administration of the estate to Creditor, but Creditor is filing this before the one-year death [anniversary] of Campiran of February 5, 2022."[9]

---

decedent or the estate." (§ 9050, subd. (a).) Here, by virtue of the 850 Petition and the probate court's statement that Maldonado could file a creditor's claim, Slauson was aware Maldonado was "demand[ing] payment from the decedent or the estate." (*Ibid*.)

[9] In stating that her claim was timely because it was filed before the one-year anniversary of Campiran's death, Maldonado was apparently relying on Code Civil Procedure section 366.2, subdivision (a), which sets forth a statute of limitations for a cause of action that survives the defendant's death. According to that provision, "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." (Code Civ. Proc., § 366.2, subd. (a).)

7

On February 1, 2022, Slauson served Maldonado with a notice rejecting her creditor's claim. (§ 9250.) The notice explained that the claim was untimely because it was filed more than four months after the issuance of letters of administration.

In appropriate circumstances, a creditor may seek leave from the probate court to file a creditor's claim after expiration of the deadlines set forth in section 9100, including when the estate's personal representative failed to send proper and timely notice of administration of the estate to the creditor. (§ 9103.) However, the probate court may not grant a petition to file a late claim if a creditor obtained "actual knowledge of the administration of the estate" more than 60 days prior to filing the petition.[10] (§ 9103, subd. (a)(1).) Maldonado did not seek leave to file a late claim pursuant to section 9103 in the Probate Proceeding.

---

[10] Section 9103 states,

"(a) Upon petition by a creditor or the personal representative, the court may allow a claim to be filed after expiration of the time for filing a claim provided in Section 9100 if either of the following conditions is satisfied:

"(1) The personal representative failed to send proper and timely notice of administration of the estate to the creditor, and that petition is filed within 60 days after the creditor has actual knowledge of the administration of the estate.

"(2) The creditor had no knowledge of the facts reasonably giving rise to the existence of the claim more than 30 days prior to the time for filing a claim as provided in Section 9100, and the petition is filed within 60 days after the creditor has actual knowledge of both of the following:

"(A) The existence of the facts reasonably giving rise to the existence of the claim.

"(B) The administration of the estate." (§ 9103.)

8

B.    *The Litigation of the Instant Lawsuit*

On February 3, 2022, Maldonado instituted the instant lawsuit against Slauson in San Bernardino County Superior Court, purporting to sue Slauson individually and in her capacity as the personal representative of Campiran's estate.[11]  The complaint alleged causes of action for (1) breach of oral agreement; (2) an accounting; (3) fraudulent concealment; (4) quantum meruit; and (5) unjust enrichment.  The complaint collectively labeled all of the causes of action as "Marvin claims."  Maldonado sought enforcement of her alleged oral agreement with Campiran regarding the Real Property, including the recovery of a portion of the proceeds from Slauson's sale of the Real Property in late 2021.

Slauson filed a demurrer on June 13, 2022.  Among other things, Slauson argued that Maldonado's lawsuit was time-barred and the trial court lacked jurisdiction because Maldonado failed to file a timely creditor's claim, which she argued was a prerequisite to filing a lawsuit to seek recovery from Campiran's estate.  Slauson requested that the trial court take judicial notice of documents from the Probate Proceeding, including the reporter's transcript from the July 28, 2021 hearing, showing that Maldonado had actual notice that the trial court had granted Slauson's petition to administer the estate.

In opposition, Maldonado argued, among other things, that her lawsuit should be allowed to proceed, despite Slauson's contention that Maldonado failed to file a timely creditor's claim, as Slauson did not send Maldonado a

---

[11]    More specifically, Maldonado erroneously identified Slauson as the "Special Administrator" of Campiran's estate, even though Slauson's powers as special administrator terminated by operation of law when letters of administration were issued to her, as a general personal representative of the estate, on August 5, 2021.  (§ 8546, subd. (a).)

9

notice of administration of the estate to let her know that the deadline for filing a creditor's claim had commenced. Maldonado contended she was entitled to such notice because she had, at the inception of the Probate Proceeding, filed a request for special notice and because she was a creditor who had asserted an interest in the Real Property through her 850 petition. According to Maldonado, due to Slauson's failure to provide her with notice of administration of the estate, she should not be barred from proceeding with her *Marvin* claims due to the lack of a timely creditor's claim. Maldonado relied on constitutional principles of due process to support her argument.

The trial court sustained the demurrer, without leave to amend, on July 12, 2023.[12] The trial court explained that "[a]ll causes of action in this complaint against the Administrator Slauson are based on the same *Marvin* fact pattern," under which Maldonado claimed an interest in Campiran's estate, but Maldonado "did not timely file a creditor claim against the Estate and therefore she is preempted from bringing this action against the moving party, Administrator Slauson." The trial court also stated that "any claims of lack of notice are belied by the fact [Maldonado] had actual notice of the proceeding."

The trial court subsequently entered judgment against Maldonado.

---

[12] The ruling on the demurrer was delayed while the trial court determined whether the timeliness of Maldonado's creditor's claim should be assessed in the Probate Proceeding or by the trial court in the instant action. Ultimately, the trial court issued the ruling in the instant action.

II.

DISCUSSION

A.    *Standard of Review*

The issue in this appeal is whether the trial court erred in sustaining Slauson's demurrer. " ' "On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo:  we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.]  In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]  We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling." (*Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 696–697.)

B.    *The Trial Court Properly Sustained the Demurrer Because Maldonado Did Not File a Timely Creditor's Claim*

In analyzing Maldonado's appeal, we begin with the rule that a creditor may pursue a lawsuit against a decedent's estate only if the creditor has first filed a timely creditor's claim with the estate's personal representative.  "A timely filed claim is a condition precedent to filing an action against a decedent's estate." (*Dobler v. Arluk Medical Center Industrial Group, Inc.* (2001) 89 Cal.App.4th 530, 536.)  " 'In an action at law for damages . . . , the plaintiff is a creditor and must file his claim against the estate of the deceased promisor or be forever barred.' . . . [¶]  A party with a remedy at law against a decedent . . . is subject to the provisions of the Probate Code requiring the presentation of claims to the executor or administrator." (*Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 833–834; see also § 9351 ["An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is

11

first filed *as provided in this part*," italics added]; § 9002, subd. (b) ["A claim that is not filed as provided in this part is barred."].) Maldonado does not dispute this fundamental principle. Nor does she dispute that the demands for relief in her lawsuit constitute claims within the meaning of the Probate Code. (§ 9000, subd. (a) [defining "claim" as "a demand for payment for any of the following, whether due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated: [¶] (1) Liability of the decedent, whether arising in contract, tort, or otherwise."].)

Accordingly, Maldonado's lawsuit cannot proceed unless (1) she filed a timely creditor's claim; or (2) she has identified a meritorious ground for the trial court in this action to excuse her failure to file a timely creditor's claim. We discuss each issue in turn.

1. *Maldonado Did Not Timely File a Creditor's Claim*

We first consider whether Maldonado did, in fact, file a timely creditor's claim. The timeliness of a creditor's claim is governed by section 9100: "A creditor shall file a claim before expiration of the later of the following times: (1) Four months after the date letters are first issued to a general personal representative. (2) Sixty days after the date notice of administration is mailed or personally delivered to the creditor." (§ 9100, subd. (a).) Here, Slauson did not serve a notice of administration on Maldonado. Accordingly, the applicable deadline was four months from the August 5, 2021 issuance of letters of administration to Slauson. Four months from August 5, 2021 is December 5, 2021. Maldonado failed to meet that deadline because she filed her creditor's claim on January 28, 2022.

The Probate Code allows a creditor to seek leave from the probate court to file a creditor's claim after expiration of the deadlines set forth in section 9100. (§ 9103.) Maldonado did not petition the probate court for leave to file

a late claim. It is doubtful that the probate court would have granted relief if Maldonado had filed such a petition. A petition to file a late claim may not be granted if a creditor obtained "actual knowledge" of the "administration of the estate" more than 60 days prior to filing the petition. (§ 9103, subds. (a)(1), (a)(2)(B).) Maldonado and her attorney were present at the hearing on July 28, 2021, when the trial court granted Slauson's petition to be appointed administrator of the estate, which the probate court would likely have found to be significant in assessing Maldonado's actual knowledge.

In sum, Maldonado's January 28, 2022 creditor's claim was untimely.

2. *Maldonado's Reliance on Constitutional Principles of Due Process Do Not Entitle Her to Proceed With Her Lawsuit In the Absence of a Timely Filed Creditor's Claim*

We next consider whether Maldonado has identified any meritorious ground for excepting her from the requirement to file a timely creditor's claim as a prerequisite to pursuing this lawsuit.

In arguing that this lawsuit should have been allowed to proceed despite her failure to file a timely creditor's claim, Maldonado relies on principles of due process. Maldonado explains that her "main contention on appeal is that, because she filed a Request for Special Notice *and* she was a known creditor, [Slauson] was required to send a Notice of Administration of the probate proceedings as to the deceased." (Italics added.) She states that "[a]t the core of this appeal is whether [Maldonado's] due process right was violated by [Slauson] failing to provide actual notice as required and then seeking the trial court to curtail her '*Marvin*' claim by contending her creditor's claim was untimely filed in the Probate Proceedings." According to Maldonado, "she should be excused in filing a late claim as no notice was

13

provided to her as required by the Probate Code," and that the "failure to give proper notice has due process implications."

As an initial matter, we reject Maldonado's contention that she was entitled to receive a notice of administration by virtue of the request for special notice (§ 1250) she filed on March 15, 2021. Even assuming, without deciding, that a request for special notice served after the issuance of letters to a *special* administrator remains valid after the issuance of letters to a *general* administrator, as occurred here, a notice of administration is simply not one of the documents for which special notice may be requested. (§ 1250, subd. (c) ["Special notice may be requested of one or more of the following matters: (1) Petitions filed in the administration proceeding. [¶] (2) Inventories and appraisals of property in the estate, including any supplemental inventories and appraisals. [¶] (3) Objections to an appraisal. [¶] (4) Accounts of a personal representative. [¶] (5) Reports of status of administration."].) Maldonado's request for special notice therefore gave her no right to be served with a notice of administration of the estate.

We do, however, agree that, due to her 850 Petition, Maldonado was a known creditor who should have received notice of administration from Slauson pursuant to section 9050. (See fn. 8, *ante*.)

Accordingly, the question is whether, under the circumstances of this case, Slauson's failure to send a notice of administration to Maldonado pursuant to section 9050 excuses Maldonado from filing a timely creditor's claim.

As the trial court recognized, the discussion in *Venturi v. Taylor* (1995) 35 Cal.App.4th 16 (*Venturi*) is on point. In *Venturi*, as here, the plaintiff's lawsuit against the decedent's estate was dismissed because he did not file a timely creditor's claim. (*Id*. at p. 20.) On appeal, the plaintiff argued that the

14

"claim against the decedent's estate was timely made, or alternatively, the time limits in which to do so were not triggered, because respondents failed to serve him with notice of administration of the decedent's estate as required by section 9050." (*Ibid*.) *Venturi* rejected the argument, holding that "a potential creditor with actual notice of the pendency of estate proceedings cannot excuse the untimely filing of a creditor's claim on the ground that the administrator failed to send a formal notice of administration of the estate, as required by Probate Code section 9050." (*Venturi*, at p. 18.) *Venturi* stated, "If, as here, the personal representative fails to give the required notice, the remedy is not to judicially engraft upon the statutory scheme an open-ended period in which to file a claim against the estate. The creditor's remedy, when its claim is denied as untimely, is to petition the court to file a late claim under section 9103." (*Id*. at p. 25.) Further, as *Venturi* pointed out, a petition brought under section 9103 will not be granted if the creditor had actual knowledge of the administration of the estate. (*Venturi*, at p. 25.)

*Venturi* explained that its focus on actual knowledge was consistent with the United States Supreme Court's discussion of due process requirements in *Tulsa Professional Collection Services, Inc. v. Pope* (1988) 485 U.S. 478. *Tulsa* held that a state's laws setting forth deadlines for a creditor's claim in probate proceedings must meet constitutional due process requirements. (*Id*. at p. 488.) To satisfy constitutional due process principles, *Tulsa* adopted "a requirement of *actual notice* to known or reasonably ascertainable creditors." (*Id*. at 490, italics added.) "If a [creditor's] identity was known or 'reasonably ascertainable,' then termination of [the creditor's] claim without actual notice violate[s] due process." (*Id*. at p. 491.)

Here, the record supports the trial court's determination that Maldonado had *actual notice* of the administration of Campiran's estate.[13] As we have explained, both Maldonado and her attorney were present at the July 28, 2021 hearing when the trial court signed the order granting Slauson's petition to administer the estate. Further, after Slauson's petition was granted, Maldonado's counsel specifically stated that he wanted his client to pursue mediation with Slauson. Under those circumstances, the record establishes that Maldonado had actual notice that the estate was being administered regardless of Slauson's failure to send Maldonado a notice of administration. (See *Venturi, supra,* 35 Cal.App.4th at p. 23 [discussion of "possible settlement of the claim" with the co-administrators showed actual knowledge of "administration of the estate"].) Therefore, as in *Venturi,* Maldonado "could not excuse timely filing of a claim when [she] had actual knowledge of the administration of the estate by other means." (*Id.* at p. 23.)

Maldonado attempts to distinguish *Venturi* by pointing out differences between the facts of *Venturi* and this case, but we find those distinctions to be irrelevant. The most important distinction that warrants discussion is that that the plaintiff in *Venturi* had actual knowledge that letters of administration had been issued, whereas, in this case, Maldonado knew only that Slauson's petition to administer the estate had been granted, with letters of administration likely to follow on a future date. In other words, what occurred at the hearing on July 28, 2021, did not *conclusively* begin the administration of the estate on that date. As prominently noted on the order

---

13    In her opening appellate brief, Maldonado contends the trial court relied on the concept of "constructive notice," rather than actual notice. She is incorrect. The trial court based its ruling on Maldonado's actual notice of the administration of the estate, stating that "any claims of lack of notice are belied by the fact Plaintiff had actual notice of the proceeding."

16

that the trial court signed on July 28, 2021, although Slauson's petition to administer the estate had been granted, the appointment was not effective until letters of administration were actually issued by the clerk of the court. Specifically, by law, an approved administrator must post a bond and sign an oath before the clerk issues letters of administration. (§§ 8403, 8480.)

Here, the letters of administration did not issue until August 5, 2021, a day after Slauson posted the required bond. There is no indication that Maldonado knew of, or was served with, the letters of administration themselves. In our assessment, however, the trial court's granting of Slauson's petition on July 28, 2021, was sufficient to provide actual notice to Maldonado that the estate was being administered. Because Maldonado knew that the trial court had granted Slauson's petition to administer the estate, Maldonado was on actual notice that letters of administration would issue imminently and that she would soon be required to take action on her creditor's claim.

Moreover, if Maldonado believed that her lack of actual knowledge of the letters of administration was significant, she should have filed a petition with the probate court for leave to file a late claim pursuant to section 9103, arguing that her lack of actual knowledge of the issuance of those letters provided good cause to allow her to file a late claim. Because Maldonado had recourse to the probate court under section 9103, she was provided with ample due process. She simply failed to take advantage of it. We accordingly find no merit to Maldonado's contention that principles of due process required that her lawsuit be permitted to proceed despite her failure to file a timely creditor's claim or to take steps, in the probate court, to obtain leave to file a late claim.

Finally, Maldonado argues, for the first time on appeal, that Slauson should be equitably estopped from contending that the creditor's claim was untimely. "The fundamental rule that a reviewing court does not consider arguments or theories that could have been but were not raised below 'is especially applicable to the doctrine of estoppel, which includes factual elements that must be established in the trial court.'" (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 490, fn. 6.) Because Maldonado did not raise the issue of equitable estoppel in the trial court, we decline to consider it.

C.     *Mootness*

As an alternative argument, Slauson contends that we should not afford Maldonado any relief and should dismiss this appeal because it has become moot. Specifically, Slauson has requested judicial notice that, on January 17, 2024, prior to Maldonado's filing of her opening appellate brief, the probate court ordered final discharge of Slauson as administrator of the estate, following the trial court's approval of the "First and Final Account and Report of Administrator and Petition for Its Settlement; For Allowance of Compensation . . . , and for Final Distribution." The final distribution was approved over Maldonado's objection and request that the probate court hold back $125,000 to cover any eventual relief that might be ordered in this action on her *Marvin* claims.

" ' "An appellate court will not review questions which are moot and which are only of academic importance." [Citations.] A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire that prevent the appellate court from granting any effectual relief.' [Citation.] The legal test for effective relief is whether there is a 'prospect of a remedy that can have a practical, tangible impact on the parties' conduct or

18

legal status.' " (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1053.)

Slauson argues that this appeal is moot because, even were we to reverse the judgment resulting from the demurrer and remand to the trial court, Maldonado would *eventually* be unable to obtain any effective relief in the trial court because Slauson "would immediately bring another motion, be it a demurrer, summary judgment motion or motion for judgment on the pleadings, based on the overruling of Maldonado's objection to the final account and the final orders in the probate case." Slauson does not elaborate on what that motion would entail, but she assumes it would be granted.[14] Therefore, according to Slauson, although the relief that Maldonado seeks in this appeal is to reverse the trial court's order and "allow her civil case to proceed," the *ultimate* result in the trial court, after further motion practice, will be a ruling that "the case cannot proceed."

We understand Slauson's argument, but we decline to dismiss this appeal on the ground of mootness because the eventual dismissal in the trial

---

[14] Maldonado argues in her reply brief that, on remand, her action would be allowed to proceed, despite the final distribution of the estate, because she "may seek 'clawback' recovery from [Slauson] if she was the recipient of assets that were not hers." Maldonado does not develop her argument, but we assume she is referring to section 9392, under which, if certain requirements are met, a creditor who was not on notice of a probate proceeding may pursue a lawsuit to establish the personal liability of a person to whom the estate's property was distributed. (§ 9392.) Notably, however, a creditor may seek relief under section 9392 only if "neither the creditor nor the attorney representing the creditor in the matter has actual knowledge of the administration of the estate *before the time the court made an order for final distribution of the property*." (§ 9392, subd. (a)(2), italics added.) That provision would appear to defeat any "clawback" attempt by Maldonado under section 9392, as Maldonado actively participated in the Probate Proceeding and attempted to file a creditor's claim prior to the order for final distribution.

court, after motion practice, is contingent and remote. Were we to have found merit to Maldonado's appeal, we could have granted her immediate effective relief in the form of a remand to the trial court. It is beyond the scope of this appeal for us to determine whether, in eventual motion practice, Slauson would succeed in obtaining a dismissal based on the fact that the Probate Proceeding has concluded.

D.     *Slauson's Motion for Sanctions*

Slauson has filed a motion requesting that we assess sanctions against Maldonado and her counsel, Vera. Slauson argues that "[t]his appeal is indisputably without merit, warranting sanctions to compensate Slauson for the expense incurred and to deter future conduct."

Our authority to impose sanctions is set forth in Code of Civil Procedure section 907, which provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Further, California Rules of Court, rule 8.276(a) states that on motion of a party or our own motion, we "may impose sanctions . . . on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay."

Under the well-settled standard adopted by our Supreme Court, "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "Thus, we may impose sanctions *either* when an appeal indisputably has no merit, *or* when it is filed for an improper purpose." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 188, italics added.) Under this dual

20

approach, "[t]he subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective. [Citation.] Whether the party or attorney acted in an honest belief there were grounds for appeal makes no difference if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit." (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 556–557 (*Kleveland*).)

"[S]anctions should be used sparingly to deter only the most egregious conduct." (*Kleveland, supra*, 215 Cal.App.4th at p. 557.) " '[A]ny definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions.' " (*In re Reno* (2012) 55 Cal.4th 428, 513.) "An unsuccessful appeal, . . . ' "should not be penalized as frivolous if it presents a unique issue which is not indisputably without merit, or involves facts which are not amenable to easy analysis in terms of existing law, or makes a reasoned argument for the extension, modification, or reversal of existing law." ' " (*Kleveland*, at p. 557.)

Here, Slauson's motion for sanctions relies solely on the theory that Maldonado and her attorney filed an appeal that indisputably has no merit, not that the appeal was brought for an improper purpose. In contending that sanctions are warranted, Slauson reiterates her the arguments on the merits of the appeal, as well as her contention, which we have rejected, that the appeal is moot.

We conclude that Maldonado's pursuit of this appeal does not rise to the level of the type of egregious conduct that warrants the imposition of

21

sanctions for a frivolous appeal. Although we have ultimately concluded that Maldonado's appeal lacks merit, the issues are relatively complex.

Further, we perceive that the source of Maldonado's procedural confusion, which has persisted throughout this appeal, was Slauson's original failure to comply with her own duty, under section 9050, to serve Maldonado with a notice of administration of the estate, which arose because Slauson knew, due to the litigation of the 850 Petition, that Maldonado was asserting an interest in the estate. Certainly, Maldonado was present at the hearing when Slauson's petition to administer the estate was granted, but Section 9050 does not excuse an administrator from serving a notice of administration on persons whom the administrator believes to have actual knowledge of the probate proceedings.

Moreover, although Maldonado indisputably had actual knowledge that Slauson's petition to administer the estate was granted on July 28, 2021, there is no indication she knew that letters of administration were eventually issued on August 5, 2021. As we have explained, that distinction is not legally relevant. But it was not objectively unreasonable for Maldonado to attempt to obtain relief based on the distinction.

Finally, although the probate court, rather than the trial court in the instant action, was the forum in which Maldonado was required to exercise her due process rights, under section 9103, to seek relief from a late-filed creditor's claim based on alleged lack of actual knowledge of the letters of administration, we acknowledge the procedural complexities caused by the intersection of the Probate Proceeding and the instant action. In that light, Maldonado's continued attempt, in this appeal, to obtain relief in this action even though she failed to seek relief in the Probate Proceeding does not amount to sanctionable conduct.

22

We accordingly deny Slauson's motion for sanctions.

DISPOSITION

The judgment is affirmed.  Slauson's motion for sanctions is denied. Slauson shall recover her costs on appeal.


IRION, J.

WE CONCUR:



McCONNELL, P. J.



RUBIN, J.